**Donnell FELDER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 89–1478.**

District of Columbia Court of Appeals.

Argued April 12, 1991.
Decided July 26, 1991.

Stephen I. Singer, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Barry Wiegand, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Elizabeth Trosman and Ronald Dixon, Asst. U.S. Attys., were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and PRYOR, Senior Judge.

STEADMAN, Associate Judge:

Appellant Felder and two others participated in an attempted robbery in which the victim was shot to death. At the first trial for murder and related offenses, the jury acquitted appellant of the charge of carrying a pistol without a license ("CPWL") but hung on the other charges. As a consequence, prior to retrial, the trial court ruled that the government would have to present its case in such a manner that no evidence was presented that appellant had the gun in his possession when the killing occurred. We upheld this ruling on a government appeal. *United States v. Felder*, 548 A.2d 57 (D.C.1988) (*Felder I*).

Before us now is an appeal from appellant's convictions at the retrial for felony murder while armed and attempted robbery while armed, tried on an aiding and abetting theory. Appellant's principal argument is that the government knowingly misled the jury in its presentation of the testimony of a coparticipant whose testimony at the prior trial had been that appellant was the killer. Appellant also argues that the government's plea agreement with that witness, which provided that the government unilaterally could determine whether false testimony had been given, violated appellant's due process rights. We affirm.

I

This case involves three confederates in an attempted robbery which resulted in a murder: appellant Donnell Felder, William

"Nicky" Myles, and John Bellinger. Felder conceived the plan to rob a drug dealer and took Bellinger along with him. They met Myles, a friend of Bellinger's, who had the requisite gun that the other two lacked. The three traveled to the crime scene, came across one Gantt (not the intended victim), and Felder gave a signal to rob him. A struggle ensued and Gantt was shot. All three offenders fled to the nearby home of an acquaintance of appellant.

In appellant's first trial, Bellinger, a government witness,[1] testified about the planning of the crime with appellant and the other events leading to the crime itself. As to the crime itself, Bellinger said that he saw appellant shoot the murder victim, as did Jessie Penn, another government witness to the shooting. Penn's testimony also indicated that Bellinger was struggling with the victim when the murder occurred.[2] Appellant himself testified that he was innocently present at the crime scene, without any involvement in the attempted robbery, when he saw Myles near another man who was "interlocked" struggling with Bellinger. The jury acquitted appellant of CPWL[3] and was deadlocked on the remaining charges.

After the first trial, appellant filed a motion to prevent the government from relitigating the question of his possession of a weapon during the attempted robbery. He argued to the trial court that collateral estoppel principles precluded the govern-

ment from again forcing appellant to "defend against charges that he was carrying a pistol during the incident giving rise to Reuben Gantt's death (or at any time on or about January 2, 1986), that he shot Reuben Gantt or that he attempted to rob Reuben Gantt while armed." The motion further asked the trial court not to permit the introduction of any evidence that "Mr. Felder had in his possession or used a pistol" at the relevant time. In sum, appellant claimed that the government could not retry appellant "on the theory that he was the shooter." The trial court credited appellant's argument and ruled that "the government will have to present the evidence [on retrial] in such a fashion that there is no evidence indicating or suggesting that Mr. Felder was, in fact, in possession of the gun at the time when the shot was fired." In *Felder I*, this court affirmed that ruling.

At the retrial,[4] Bellinger testified as the government's only direct eyewitness. His testimony was consistent with that given at the first trial, but omitted any mention of appellant's possessing a gun or being the killer. Bellinger simply said he "heard a gunshot," and after that, the three "just took off running."[5] Neither Penn nor appellant took the stand. Appellant was convicted of attempted robbery while armed, D.C.Code §§ 22-2902, -3202, and felony murder while armed, *id.* §§ 22-2401, -3202. This appeal followed.

---

1. Bellinger testified in exchange for acceptance by the government of a plea of guilty to manslaughter while armed and attempted robbery. The jury knew of the plea bargain, and cross-examination by appellant was permitted.

2. According to undisputed expert testimony, the shot that killed Gantt was fired from no greater than one inch from Gantt, which was directly at odds with both Bellinger's and Penn's stories, respectively, that Gantt was running away from Felder, or else was "eighteen to twenty-one" feet away from Felder, when Gantt was shot. *Felder I, supra,* 548 A.2d at 60.

3. *Felder I* extensively analyzed the reasons why the jury may have acquitted appellant of the CPWL charge. The panel said that the jury presumably found a reasonable doubt about appellant's guilt because both government eyewitnesses who testified that appellant was the shooter, Bellinger and Penn, placed Felder at a greater distance from Gantt than one inch, *see*

note 2 *supra,* whereas appellant's own rendition coincided with a contact shooting by Bellinger. *See Felder I, supra,* 548 A.2d at 60.

4. Actually, this was the third trial. A second trial also resulted in a mistrial when a juror failed to return after an overnight recess.

5. The independent evidence of guilt offered in the third trial included testimony by Ruby Newton that appellant admitted participation in the attempted robbery when he came to her house afterward with Myles and Bellinger; a deposition from Arthur Dove, who had testified at the second trial that he saw appellant and several other men talking to Gantt, went in search of drugs inside a nearby house, heard a gunshot, and came out to find Gantt had been shot; and police ballistics testimony that Myles' gun was the murder weapon.

## II

Appellant first argues that the government violated his due process rights because it knowingly misled the jury to conclude that according to Bellinger, Myles shot Gantt, when the government knew, from Bellinger's first-trial testimony, that according to Bellinger, Felder shot Gantt. While appellant concedes that Bellinger never testified "in so many words" that Myles shot Gantt, it nevertheless argues that the government "structured and elicited [Bellinger's testimony] so as to leave the jury with the impression that Bellinger's truthful version was that Myles shot Gantt," and that the prosecutor did likewise in argument. Apparently, an ultimate purpose in appellant's argument stems from an underlying conception that without specific proof that someone other than appellant killed Gantt, the case against appellant fails.[6]

We think appellant's arguments fail to take fully into account the posture of the retrial and the limitations on the testimony imposed by appellant's own motion. In accordance with jury instructions,[7] the government only had to prove that appellant participated in the attempted robbery with guilty knowledge, and that someone killed Gantt. *West v. United States,* 499 A.2d 860, 865 (D.C.1985); *Head v. United States,* 451 A.2d 615, 625 (D.C.1982). While it is also true that there must be "evidence that someone other than the defendant was the principal whom the defendant aided and abetted," *Payton v. United States,* 305 A.2d 512, 513 (D.C.1973) (per curiam), "[i]t is generally agreed, however, that it is 'not essential that the principal in the operation be identified so long as someone ha[s] that status.'" *Gayden v. United States,* 584 A.2d 578, 582 (D.C.1990) (citation omitted); *United States v. Kegler,* 233 U.S.App.D.C. 58, 69, 724 F.2d 190, 201 (1984) ("An aider and abettor of a crime may be tried and convicted even though the principal is not tried, convicted or identified"). Once the above elements are met, " '[n]o distinction [is] made between principals and aiders and abettors for purposes of felony murder liability.' " *West, supra,* 499 A.2d at 866 (citation omitted). Here, there was clearly sufficient evidence to link appellant to the attempted robbery and to show that a murder was committed during that felony by one of the felons. *Head, supra,* 451 A.2d at 625. Moreover, appellant nowhere argues that the robbery was separate and distinct from the shooting. Thus, "[a] jury could reasonably have concluded that there existed a joint scheme to rob [Gantt] and that the fatal shot, which was fired within minutes after the robbery had commenced, was a natural and probable consequence of the attempted robbery...." *West, supra,* 499 A.2d at 866. The government was not required to show affirmatively, through Bellinger or any other witness, that either Myles or Bellinger was the triggerman.

Of course, "[a] prosecutor may not knowingly present false evidence or permit evidence, known to be false, to go uncorrected.... A defendant is accordingly entitled to a new trial if there is ' "any reasonable likelihood" ' that false testimony could ' "have affected the judgment of the jury." ' " *Hawthorne v. United States,* 504 A.2d 580, 589 (D.C.1986), quoting *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 271, 79 S.Ct. 1173, 1178, 3 L.Ed.2d 1217 (1959).[8] "[T]he

6. Appellant at oral argument stated that if the government sought to put Penn on the stand, he would raise the same objection as to Bellinger's testimony.

7. The trial court gave standard instructions on the elements of the offenses of attempted robbery while armed and first-degree felony murder, and on aiding and abetting. After stating the aiding and abetting instruction, the trial court added:

Finally, it is not necessary that all of those persons perpetrating the crime be apprehended or identified. It is sufficient that you find beyond a reasonable doubt that the crime[s] were committed by someone and you find beyond a reasonable doubt that the defendant aided and abetted the actual perpetrator in the commission of such crime.

8. We have recognized that this proscription applies as well to misleading testimony. *See Townsend v. United States,* 512 A.2d 994, 999 (D.C.1986), *cert. denied,* 481 U.S. 1052, 107 S.Ct. 2188, 95 L.Ed.2d 843 (1987).

nondisclosure need ... not be willful on the part of the prosecutor to result in sanctions." *Hawthorne, supra,* 504 A.2d at 591 n. 26, citing *Giglio, supra,* 405 U.S. at 154, 92 S.Ct. at 766.

In its presentation of the case, however, the government was not bound by the structure the first trial but was entitled to reexamine its case as a whole. While it is true that the government knew that Bellinger had previously testified that Felder did the shooting, Bellinger's version of the facts was not binding or conclusive in every respect.[9] In the presentation of Bellinger's testimony, the government was operating within the strictures imposed by appellant's own motion, to which appellant could hardly object.

None of the cases cited by appellant involved the added dimension of a pretrial ruling circumscribing the examination and testimony of the witness. It appears to us that appellant got exactly what he asked for in his original motion, granted by the trial court and upheld in *Felder I,* in which appellant sought to preclude all evidence that he held the gun during the day of the attempted robbery and murder. The government was thus required to omit all references to appellant as the triggerman, and did so.

Appellant did not object at any point to the government's examination of Bellinger, except generally by an initial motion to exclude Bellinger's testimony altogether as perjurious *per se.* Nowhere in his cross-examination of Bellinger did appellant attempt to elicit his prior testimony that appellant shot Gantt; instead, appellant joined the government in sticking closely to the dictates of *Felder I.* The trial court made it clear that it was joining *both* parties in steering Bellinger clear of suggesting that appellant had the gun for fear that they would "run afoul of the Court of Appeals case" in *Felder I.* Indeed, the only question appellant asked on cross-examination of Bellinger which is at all relevant to the identity of the shooter was one of the same questions asked by the prosecutor that appellant so vigorously objects to here, *viz.,* whether Myles and Felder were standing right next to Gantt at the time Gantt was shot.[10]

Appellant asserts that besides offering Bellinger's testimony itself, the prosecutor also argued that that testimony in effect named Myles as the gunman. We think this an overstated reading of the transcript. Obviously, Bellinger's testimony was important to the government case and could be fairly referred to, including the fact that Myles was the person who supplied and was armed with the gun. Rather than labelling Myles as the actual killer, the prosecutor repeatedly referred only in the abstract to the operative legal principle, *e.g.,* that appellant, having participated in the crime, was "just as guilty as the person who pulled the trigger."

In sum, we find no false or misleading testimony offered within the context of this retrial mandating a reversal.

### III

■ Appellant further argues that the government's plea arrangement with Bellinger violated appellant's due process rights and that his testimony should therefore have been excluded on that basis. He cites cases holding improper agreements requiring the witness to testify to the government's satisfaction or achieve a conviction. *See generally Hawthorne, supra,* 504 A.2d at 587 (citing *United States v. Librach,* 536 F.2d 1228, 1230 (8th Cir.), *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976)). Appellant claims that two paragraphs [11] of the plea agreement

---

9. As the testimony of both Penn and appellant at the first trial indicated, both Bellinger himself and Myles were placed in a close-range position with Gantt so as to have been "potentially" the actual killer.

10. *Bellinger* answered that Felder and Myles both were standing next to Gantt at the time of the shooting. Appellant made no attempt to

strike the testimony as violative of *Felder I* or as misleading.

11. Paragraph 4 of the plea arrangement stated, in relevant part:

... if the government determines that Mr. Bellinger has intentionally given false, incomplete, or misleading testimony or information

make clear that the agreement was contingent on government satisfaction because they required testimony that was truthful according to the government.[12] On this basis, appellant moved before the trial court to exclude Bellinger's testimony. The trial court, however, ruled that the agreement was not contingent because it merely required Bellinger to testify truthfully (without requiring him to achieve a conviction or satisfy the government in any other way) while permitting the government to reject the plea only if it determined his testimony to be "untruthful." We agree with this ruling.

The most instructive case on point is *United States v. Tarantino*, 269 U.S.App. D.C. 398, 432–33, 846 F.2d 1384, 1418–19, *cert. denied*, 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988),[13] where the witness had agreed to testify in exchange for a government promise to apprise the sentencing judge of the nature, extent, and value of the witness' cooperation unless the witness gave any false statement or perjured himself, in which case the government reserved the right to terminate the plea arrangement and to proceed with prosecution. The circuit court held that that plea agreement—just as we find the one between Bellinger and the government here—was "less akin to th[o]se contingent arrangements [requiring government satisfaction or indictments] than to a typical plea bargain under which an accomplice agrees to testify in exchange for a promise of a reduced sentence." *Id.* at 433, 846 F.2d at 1419. Indeed, ours presents an even stronger case for approving the bar-

gain and testimony because unlike in *Tarantino*, Bellinger's testimony was not even by its terms conditioned on the "value" of his testimony to the government. Moreover, even though the testimony here was conditioned on testimony found to be truthful *by the government*, the controlling cases do not hinge on or even discuss any requirement that an otherwise valid truthfulness provision in a plea agreement must turn on a court's determination of truth. The general requirement of truthful testimony on any basis "surely must encourage veracity" and " 'negates [the] inference of inducement to testify falsely.' " *Tarantino, supra*, 269 U.S.App.D.C. at 433, 846 F.2d at 1419, quoting in part *United States v. Moody*, 778 F.2d 1380, 1385 (1985), *amended on other grounds*, 791 F.2d 707 (9th Cir.1986). *See also Price v. United States*, 531 A.2d 984, 989 (D.C.1987) (trial court acceptance of plea upheld where the agreement "did not make [the witness'] testimony inherently unreliable").

Finally, the government's arrangement with Bellinger was fully ventilated so that the jury could gauge his credibility. *See Tarantino, supra*, 269 U.S.App.D.C. at 433, 846 F.2d at 1419; *Price, supra*, 531 A.2d at 988 ("[t]he jury, not a reviewing court, is the one to decide whether a particular plea arrangement has caused a witness to give falsely incriminating testimony"); *Hawthorne, supra*, 504 A.2d at 587. Here, just as in *Hawthorne*, the jury knew the terms of the agreement as established before trial, and that sentencing was continued. The government fully aired the

---

subsequent to the date of this Agreement, or in any way has not complied with the terms of this Agreement, then the government may unilaterally and without judicial review, declare that the Cooperation Agreement is null and void....

Paragraph 7 provided:

... the United States will solely decide if Mr. Bellinger's proposed testimony is truthful and if it finds his testimony untruthful this Cooperation Agreement shall be null and void....

**12.** Appellant also argues that the plea agreement and testimony were invalid because Bellinger's sentencing was "open-ended" in the sense that it was continued to the end of appellant's third trial and he might thus have been testifying with

an eye toward a reduced sentence. This court has previously concluded, however, that the fact that the witness' sentence is open-ended or undetermined is not a basis for invalidating the plea agreement or the witness' testimony. *See Hawthorne, supra*, 504 A.2d at 587 & n. 18.

**13.** Appellant relies in the main on one federal case, *United States v. Waterman*, 732 F.2d 1527, 1532 (8th Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985), which excluded testimony required to be truthful on due process grounds as opposed to the narrow ground of the court's supervisory authority. The case, however, has been vacated, and in any event is not the law of this jurisdiction.

terms of Bellinger's plea bargain on direct, appellant vigorously cross-examined him, and the jury was thus free to disbelieve Bellinger's testimony. Appellant does not argue that he did not have adequate opportunity to cross-examine Bellinger regarding the plea. Although there was no questioning concerning the truthfulness requirement per se, the government correctly points out that the nondisclosure was at the behest of appellant. *See Hawthorne, supra,* 504 A.2d at 589. We find no error in the trial court's allowance of the testimony at issue here.

Accordingly, the judgment appealed from is affirmed. However, the parties agree, and the trial court fully recognized, that in the event of affirmance, the case must be remanded for vacatur of one of the convictions because of merger. *Brown v. United States,* 464 A.2d 120, 125 & n. 7 (D.C.1983); *Price v. United States, supra,* 531 A.2d at 989 n. 7.

*So ordered.*