461 S.E.2d 478

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Linda HARDESTY, Defendant Below, Appellant.**

**No. 22593.**

Supreme Court of Appeals of West Virginia.

Submitted May 30, 1995.

Decided July 18, 1995.

Concurring Opinion of Justice Cleckley July 19, 1995.

Virginia Jackson Hopkins, Prosecuting Attorney, Kingwood, for appellee.

William L. Frame, Wilson, Frame, Benninger & Metheny, Morgantown, for appellant.

FOX, Judge: [1]

This appeal from the Circuit Court of Preston County, West Virginia, brings before the Court two issues arising from a trial in which the appellant, Linda Hardesty, was convicted of eight criminal offenses relating to the possession and delivery of a controlled substance. The appellant contends she received multiple punishments for the same offense, in violation of the double jeopardy provisions of the West Virginia and United States Constitutions. She also contends the circuit court erred in rulings relating to the admission into evidence of a written transcript of audio tape recordings made by police.

In July 1993, a confidential informant with the Tygart Valley Drug and Narcotics Task Force (Task Force) began working in the Kingwood, West Virginia, area. On 12 July 1993, the informant paid a visit to The Office Bar in Kingwood, an establishment operated by the appellant. After striking up a conversation with the appellant, the informant indicated his desire to purchase "four hits of acid." [2] The appellant left the bar and went upstairs to the apartment where she lived with her daughter and her daughter's boyfriend, Chris Shrout. After a brief interval, the appellant returned with the LSD. She and the informant left the bar, and the informant paid her and received the LSD on the sidewalk in front of the bar.

On 13 July 1993, the informant returned to The Office Bar, spoke with the appellant, and asked to purchase four more hits of LSD. Using an intercom system, the appellant called upstairs and placed the informant's

---

1. Pursuant to an administrative order entered by this Court on 18 November 1994, the Honorable Fred L. Fox, II, Judge of the Sixteenth Judicial Circuit, was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing 1 January 1995 and continuing through 31 March 1995, because of the physical incapacity of Justice W.T. Brotherton, Jr. On 14 February 1995 a subsequent administrative order extended this assignment until further order of said Court.

2. "Acid" is the common term that refers to lysergic acid diethylamide (LSD). "Hit" is common terminology used to refer to a single dosage unit of LSD. West Virginia Code § 60A–4–401 (1992) prohibits delivery and possession with intent to deliver controlled substances, and W.Va.Code § 60A–2–204(d)(13) (1992) lists lysergic acid diethylamide as a Schedule I controlled substance.

order. Chris Shrout subsequently came downstairs, and the informant gave Shrout money and received the LSD there in the bar.

Later the same day, while working on an unrelated case, the informant noticed Shrout standing on the street in front of The Office Bar. The informant asked Shrout if he had any LSD left, and Shrout said he had three hits left. The informant left, returned to the Task Force members, and asked if they wanted a "buy" of the remaining LSD. Members of the Task Force instructed the informant "to get the rest of it off the street." The informant returned and parked his car in a space in front of the bar. The appellant emerged from the bar, and the informant placed his order. The appellant then went upstairs, returned with the LSD, and she and the informant consummated their transaction.

The informant wore a "wire" on each of the three occasions he purchased LSD from the appellant and Chris Shrout. The "wire" consisted of a microphone and a radio transmitter which transmitted the informant's conversation to Task Force members, who made audio tape recordings of the transmissions.

In October 1993, the Preston County Prosecuting Attorney brought The Office Bar cases before the county's grand jury. On 19 October 1993, the grand jury returned a ten-count indictment against the appellant. Counts 1, 4, and 7 of the indictment charged the appellant with possession of a controlled substance with intent to deliver within 1000 feet of a public school, in violation of W.Va. Code § 60A–4–401.[3] Counts 2, 5, and 8 of the indictment charged the appellant with delivery of a controlled substance within 1000 feet of a public school, in violation of W.Va. Code § 60A–4–401(a)(ii).[4] Counts 3 and 10, alternatively, charged the appellant with delivery of an imitation controlled substance in violation of W.Va.Code § 60A–4–401.[5] Counts 6 and 9 charged the appellant with conspiracy to deliver a controlled substance, in violation of W.Va.Code § 61–10–31.[6]

The appellant was arraigned on 29 October 1993 and pleaded not guilty to all charges. At the arraignment, the prosecutor provided a disclosure, listing as exhibits the audio tape recordings made by the Task Force of the informant's transactions with the appellant and Chris Shrout. The disclosure did not reveal the identity of the informant. The case was scheduled for trial on 5 April 1994.

At trial, a jury convicted the appellant on eight counts of the indictment: three counts

3. West Virginia Code § 60A–4–401 (1992) provides, in pertinent part:

 (a) Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.

 Any person who violates this subsection with respect to:

 \* \* \* \* \* \*

 (ii) Any other controlled substance [not contained in (i)] classified in Schedule I, II or III, is guilty of a felony, and, upon conviction, may be imprisoned in the penitentiary for not less than one year nor more than five years, or fined not more than fifteen thousand dollars, or both[.]

West Virginia Code § 60A–4–406(a)(2) (1992) states:

 (a) Notwithstanding any provision of this code, a person convicted of a felony violation of the provisions of section four hundred one [§ 60A–4–401] of this article for distribution of a controlled substance who:

 \* \* \* \* \* \*

 (2) [i]s eighteen years of age or older and the distribution upon which the conviction is

based occurred in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational or secondary school ... shall, if sentenced to the custody of the commissioner of corrections for service of a sentence of incarceration, be ineligible for parole for a period of two years.

4. *See* note 3, *supra.*

5. The West Virginia State Police Forensic Laboratory could confirm the presence of LSD in only one of the specimens submitted. West Virginia Code § 60A–4–401(b) (1992) states, in pertinent part:

 (b) Except as authorized by this chapter, it is unlawful for any person to create, deliver, or possess with intent to deliver, a counterfeit substance.

6. West Virginia Code § 61–10–31 (1992) states, in pertinent part:

 It shall be unlawful for two or more persons to conspire (1) to commit any offense against the State. . . .

of possession with the intent to deliver LSD within 1000 feet of a public school; three counts of delivery of LSD within 1000 feet of a public school; and two counts of conspiracy to commit the crime of delivery of a controlled substance. The jury acquitted the appellant on the two alternative charges of delivery of an imitation controlled substance. The court sentenced the appellant to eight concurrent one-to-five-year sentences.[7]

The appellant argues she received multiple punishments for the same offense, in violation of State and Federal constitutional double jeopardy provisions.[8] Specifically, she contends she was punished for eight crimes, but the evidence supported only four substantive crimes, that is, three LSD sales and one continuing conspiracy to sell LSD. The appellant raised the same contention prior to and at the time of trial. The circuit court agreed, in part, concluding the three possession with intent to deliver charges and the three delivery charges were duplicative. In an effort to cure this double jeopardy violation, the court ran the sentences concurrently, so "there is no multiple punishment for those three counts." The court rejected the appellant's contention that the two conspiracy charges were duplicate charges of the same crime.

■ We agree with the trial court's conclusion that the possession with intent to deliver counts and the delivery counts were duplicate charges, and that multiple punishments for these duplicate charges would violate constitutional double jeopardy protections. However, we do not agree with the trial court's conclusion that the concurrent sentencing cured violations of double jeopardy provisions prohibiting multiple punishments for the same offense. Concurrent sentencing does not cure violations of constitutional double jeopardy provisions prohibiting multiple punishments for the same of-

fense. *See State ex rel. Blake v. Chafin,* 183 W.Va. 269, 395 S.E.2d 513 (1990).

In *Chafin,* this Court explicitly rejected the view known as the "concurrent sentence rule." Essentially, the concurrent sentence rule holds concurrent sentencing cures violations of constitutional double jeopardy provisions prohibiting multiple punishments for the same offense. We reject the concurrent sentence rule because we believe there is a possibility that duplicate convictions adversely affect an inmate's consideration for parole. This harm is not cured by concurrent sentences. For example, as in this case, we believe there is a substantial possibility that an inmate with three convictions will receive more favorable consideration for parole than an inmate with six convictions.

In accord with this view, we conclude the trial court should have stricken the three duplicate convictions for possession with intent to deliver a controlled substance. Accordingly, we reverse the judgments of conviction entered against the appellant on counts 1, 4, and 7, charging her with possession with intent to deliver a controlled substance.

■ We disagree with the appellant's contention that the two conspiracy counts are duplicate charges of the same crime. The evidence clearly proves that on two occasions, on two different days, two separate conspiracies occurred and resulted in two distinct drug sale transactions. Although the conspirators and the type of controlled substance were the same in each transaction, the two transactions shared no other evidentiary basis. In syllabus point 8 of *State v. Johnson,* 179 W.Va. 619, 371 S.E.2d 340 (1988), this Court stated:

> The following factors are normally considered under a totality of circumstances test to determine whether one or two conspiracies are involved: (1) time; (2) persons acting as co-conspirators; (3) the stat-

7. At the appellant's sentencing, the judge informed her, "[u]nder West Virginia law you would not be eligible for parole until you would have served at least two years" (referring to W.Va.Code § 60A–4–406(a)(2)).

8. The Fifth Amendment to the United States Constitution provides, in part: "[N]or shall any per-

son be subject for the same offense to be twice put in jeopardy of life or limb[.]" Section 5 of Article III of the West Virginia Constitution states, in part: "No person shall ... be twice put in jeopardy of life or liberty for the same offence."

utory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicate the nature and the scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place. These factors are guidelines only. The essence of the determination is whether there is one agreement to commit two crimes, or more than one agreement, each with a separate object.

The times, means of the conspirators' communications, manner of delivery of the drugs, places of the delivery of the drugs, and the identity of the conspirator delivering the drugs differed in each transaction. For these reasons, we conclude the conspirators made two separate agreements to deliver LSD.

Accordingly, we conclude the appellant's sentencing on the two conspiracy convictions did not violate the constitutional double jeopardy provisions prohibiting multiple punishments for the same offense.

The appellant contends the trial court erred by admitting into evidence transcripts of the audio recordings of the drug sale transactions prepared by the police. She contends the admission of the transcripts "unfairly surprised and prejudiced" her and that the admission of the transcripts violated Rule 1002 of the West Virginia Rules of Evidence, commonly known as the "best evidence rule." [9]

Utilizing the informant's hidden microphone and radio transmitter, Task Force members made audio tape recordings of the drug sale transactions between the informant, the appellant, and Chris Shrout. The resulting audio tapes were of poor quality. Task Force members electronically enhanced the recordings and, on or about 1 April 1994, Task Force members and the informant repeatedly listened to the enhanced recordings and prepared transcripts. On Friday, 1 April 1994, copies of the transcripts were faxed and hand delivered to the appellant's trial counsel. The appellant's trial began on 5 April 1994.

At the commencement of the trial, the appellant's counsel objected to the State's intended use of the transcripts. In support of the objection, defense counsel contended surprise and violation of the best evidence rule. The trial court overruled the objection and allowed the admission of the transcripts into evidence. The defense requested a cautionary instruction. The court complied, and gave the instruction each time a tape was played for the jury.[10] Each of the three times the tapes were played, the jury was furnished with the transcripts. Although admitted into evidence, the record contains no indication the transcripts were taken to the jury room during deliberations.

■ Audio and video tape recording transcripts provided to a jury as an aid while the actual tapes are being seen or heard are not themselves evidence, should not be admitted into evidence, and should not be furnished to the jury during deliberations. Audio and video tape recording transcripts are demonstrative aids for the understanding of evidence; they should be so marked and identified; and the court should instruct the jury

9. Rule 1002 of the West Virginia Rules of Evidence states:

Requirement of Original. To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute.

10. The court gave the following cautionary instruction to the jury each time they were provided with a transcript of the recordings:

Ladies and gentlemen of the jury, ... the Court gives you a cautionary instruction that you are going to hear the tape and at the time you hear the tape you will have a copy of ...

the transcript to read. What the tape says, what is said on this tape is your decision. The transcript the Court admits on the basis that it has been testified to how it was made and that's been explained to you by the witness. It is not an official transcript. You determine what was said from the tape. It is your decision as to what this tape says and you're not bound in any manner by what is on this transcript. This is simply what others who have listened to it say that it says. But you as the judge of the facts decide what is said on this tape and you as the judge of the facts decide what weight and credit you're going to give to this evidence, the same as with all other evidence.

regarding the purpose and limited use of the transcripts.

> To use transcripts [as a tool to assist the jury in listening to a recording] ..., the proponent must first authenticate the transcripts, the court must carefully advise the jury that the transcripts are only an aid and that the recording itself is the substantive evidence, and the judge must not allow the transcripts into the jury room because they are not actually admitted into evidence....

2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* 343 (3d ed. 1994).

In *United States v. Meredith*, 824 F.2d 1418, 1427–28 (4th Cir.1987), the Fourth Circuit Court of Appeals upheld the trial court's ruling which allowed the jury to see a redacted transcript of a taped conversation. In so doing, the court stated:

> More than once, we have recognized that the use of transcripts in helping a jury to listen to a tape is within the trial court's discretion. (Citations omitted.) In this case, the trial judge properly exercised his discretion in offering the transcript as a listening aid. The jury both read the transcript and heard the tape. The trial court specifically instructed the jury that the tape and not the transcript was in evidence, and that the transcript was only to be used as a guide in following the tape. He also told the jurors that their understanding of the tape, rather than the transcript, was to govern their deliberations.

In the case at bar, even though the judge admitted the transcripts into evidence during the trial, they were used only as listening aids.[11]

■ Because the tape transcripts technically were not evidence, their admission into evidence did not violate the best evidence rule. Accordingly, we reject the appellant's contention that the admission of the transcripts into evidence violated the best evidence rule.

The appellant also contends she was surprised by the State's late disclosure of the transcripts. The State disclosed the existence of the transcripts only four days prior to trial, on 1 April 1994. And, it was on this date the State furnished copies of the transcripts to the defense. Citing late disclosure and surprise as grounds, the appellant's counsel objected to the State's intended use of the transcripts. This objection, which was raised at the beginning of the trial, was overruled by the court.

■ The appellant fails to specifically establish harm arising from the court's decision overruling the objection to the transcripts. The appellant's brief contains only conclusory contentions of prejudice as a result of the late disclosure of the transcripts and use of the transcripts at trial. The appellant identifies no specific harm arising from the use of the transcripts or their late disclosure. Conclusory assertions of prejudice are insufficient.

■ We also note that the appellant did not properly preserve or develop this issue for appeal. Properly preserving and developing the issue required a motion for a continuance and a proper record in support of the motion. When the court overruled the objection to the transcripts, the appellant's counsel should have moved for a continuance. The motion should have set forth the specific manner in which the defense would have utilized the transcripts if granted a continuance. And, in support of the motion, the defense should have developed a record which explored the reasons for the State's belated preparation of the transcripts. Unfortunately, the record of this case contains no information regarding the reasons the transcripts were not prepared until four days before trial. Most importantly, the record does not reveal when the State decided it would prepare transcripts of the tapes. Because of the appellant's failure to make a motion for a continuance and a proper record on this issue, we conclude the defense waived any error relating to the late disclosure of the transcripts or their use at trial.

■ The appellant raises one other issue relating to the audio tape recordings. The appellant's trial counsel was permitted to

---

11. *See United States v. Taghipour,* 964 F.2d 908 (9th Cir.1992).

listen to the audio tapes but was not furnished copies of the tapes. Moreover, the appellant was not permitted to listen to the tapes. The State imposed these restrictions for the purpose of protecting the informant's identity. The appellant now claims that these restrictions prevented an effective cross examination of Task Force members regarding their interpretation of the tapes and prevented the development of a proper explanation of the tapes' numerous unintelligible portions. We do not wholly dismiss the possible merit in these contentions. However, the factual record runs counter to the appellant's claims regarding the lack of opportunity for reviewing the tapes. On 29 October 1993, the State disclosed the existence of the tapes. Yet, the appellant's counsel did not request the tapes until approximately two weeks prior to trial. Consequently, the appellant assumed any disadvantage resulting from the "late" opportunity for reviewing the tapes.

 The appellant also contends prejudice resulted from the fact that she was not personally permitted to listen to the tapes. Once again, the appellant failed to properly preserve or develop this issue for appeal. The record contains no motion in which the appellant asks the court to order the State to permit her to personally listen to the tapes. More importantly, the record contains no indication the appellant informed the circuit court that she needed the tapes for the specific purpose of preparing a transcript representing her version of the conversations recorded on the tapes. In the absence of such a motion grounded in a specific need for the appellant's personal access to the tapes, and in the absence of a record exploring the validity of the State's claim of protecting the informant's identity, this Court lacks the means of addressing this issue.

For the reasons stated, we reverse the judgments of conviction entered against the appellant on indictment counts 1, 4, and 7, charging her with possession with intent to deliver a controlled substance. In accord with this result, we remand this case to the circuit court with directions to strike the aforesaid judgments of conviction. However, the remaining five concurrent one-to-five-year sentences, three sentences on the convictions for delivery of LSD and two sentences on the convictions for conspiracy to deliver LSD, are valid and may be properly executed.

Affirmed in part, reversed in part, and remanded with directions.

BROTHERTON, J., did not participate.

FOX, Judge, sitting by temporary assignment.

CLECKLEY, Justice, concurring:

(Filed July 19, 1995)

I agree with the majority's opinion in all aspects. I concur only to express my view as to one of the evidentiary issues raised by the defendant.

To be admissible as substantive evidence, a transcript of a tape recording must satisfy both the best evidence rule and the hearsay rule. Unquestionably, the transcript in this case does not satisfy the requirements of the best evidence rule. Specifically, it does not qualify as a "duplicate" under Rule 1001(4) of the West Virginia Rules of Evidence because the transcript was prepared manually rather than mechanically.[1] *See Wright v. Farmers Co-Op of Arkansas and Oklahoma,* 681 F.2d 549, 553 n. 3 (8th Cir.1982). However, this determination is not dispositive of the issue raised on appeal. The best evidence rule is applied only to substantive evidence. Transcripts, as used in this case, are not introduced as substantive evidence but rather as demonstrative evidence—"as an accompaniment to the recording itself to aid the jury's understanding." Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence* § 10.7 at 1218 (1994). *See also* Charles E. Carr, *Voices, Texts, and Technology: Evidence Law Confronts Tapes and Their Transcriptions,* 35 St. Louis U.L.J. 289 (1991). I

---

1. Rule 1001(4) states:
 "*Duplicate.*—A 'duplicate' is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic recording, or by chemical reproduction, or by other equivalent techniques, which accurately reproduces the original."

believe the trial court properly allowed the admission of the transcript as demonstrative evidence.

The only remaining question is whether the trial court should have permitted the transcript to be used by the jury during deliberations. Again, the defendant has a difficult bridge to cross because no specific objection was made to this issue. In other words, the focus of the defendant's protest at trial was that the transcript could not be used at all because the transcript could not qualify under the best evidence rule. Once the trial court overruled this objection and permitted the use of the transcript as demonstrative evidence only, an additional protest was required under Rule 103(a)(1) of the West Virginia Rules of Evidence to preserve as an appellate issue the jury's access to the transcript during deliberations.[2] Had the trial court been confronted with this specific objection, it very well may have sustained the objection and denied the jury access to the transcript during deliberations. Of course, as a general rule, whether demonstrative evidence can go with the jury during deliberations is a discretionary call for the trial court. On the other hand, written demonstrative evidence, such as the transcript in this case, should not be permitted to go to the jury room in order to avoid giving it undue emphasis in relation to the tape recording itself and other testimonial evidence. *See State v. Corbin,* 117 W.Va. 241, 186 S.E. 179 (1936). *See also U.S. v. Jonnet,* 762 F.2d 16, 20 (3rd Cir.1985); *U.S. v. Abbas,* 504 F.2d 123, 124–25 (9th Cir.1974), *cert. denied,* 421 U.S. 988, 95 S.Ct. 1990, 44 L.Ed.2d 477 (1975).

---

**2.** In order to preserve this issue on appeal, the defendant must have objected specifically to the trial court's decision permitting written demonstrative evidence to be used by the jury during deliberations. As we suggested in *Tennant v. Marion Health Care Foundation, Inc.,* 194 W.Va. 97, 114, 459 S.E.2d 374, 391 (1995), entering an objection to a trial court's ruling or action is not primarily a matter of building a record for appeal or a tactical maneuver by counsel. Its principal purpose is for counsel to bring to the attention of the trial court evidence that counsel considers inadmissible or prejudicial so that, if there is an error involved, the trial court has a chance to correct it on the spot.

Absent an objection, we can reverse the challenged action only for plain error. Plain error is obvious and substantial error which seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995). A review of all the evidence, including the contents of the transcripts, does not show that the trial court committed plain error.