569 S.E.2d 784

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Jessie Lee SWIMS, Defendant Below, Appellant.**

**No. 30099.**

Supreme Court of Appeals of West Virginia.

Submitted: April 23, 2002.

Decided June 7, 2002.

Dissenting Opinion of Justice Maynard July 3, 2002.

William S. Thompson, Cook & Cook, Madison, West Virginia, for appellant.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, West Virginia, for appellee.

DAVIS, Chief Justice.

Jessie Lee Swims, appellant/defendant below (hereinafter referred to as "Mr. Swims"), appeals an order of the Circuit Court of Boone County that denied his motion for a new trial. Mr. Swims was convicted by a jury of conspiracy and aggravated robbery. The circuit court imposed a sentence of one to five years imprisonment for the conspiracy conviction, and 120 years imprisonment for the aggravated robbery conviction.[1] In challenging his conviction, Mr. Swims asserts that the trial court committed reversible error by: (1) striking a juror for cause after voir dire was completed; (2) allowing the use of a transcript of a videotape of the crime; (3) allowing testimony as to the age and sex of a murder victim in another jurisdiction; (4) failing to redact a portion of plea agreements involving co-defendants; and (5) imposing a disportionate sentence. After reviewing the briefs and record in this matter, we conclude that the circuit court, in fact, erred by failing to redact certain language contained in the plea agreements. Consequently, Mr. Swims' convictions and sentences are reversed and this case is remanded for a new trial.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In the early morning hours of November 15, 1999, Mr. Swims and two accomplices, Adam Hamrick and Ronnie Young, robbed a convenience store in Boone County. Trial testimony indicated that it was Mr. Swims and Mr. Young who actually entered the store to commit the robbery, while Mr. Hamrick remained outside as the get-away driver. During the course of the robbery, Mr. Swims allegedly stuck a weapon in the face of the store clerk and demanded money and cigarettes.[2] As the store clerk complied with the demand, Mr. Young grabbed two cases of beer. Mr. Swims and Mr. Young then fled the store with approximately $300.00 in cash, several cartons of cigarettes, and beer. The entire robbery was videotaped on the store's security camera.[3]

The police were able to quickly make arrests in the case as a result of a routine traffic stop. The get-away vehicle, a pick-up truck owned by Mr. Hamrick, was stopped several hours after the robbery because it did not have an inspection sticker. At the time of the traffic stop, Mr. Young was riding in the truck. It was being driven by his neighbor, Shane Curtis. The police impounded the vehicle after learning that the license plate was stolen property.[4]

Shortly after impounding the vehicle, the police went to the home of Mr. Swims' parents, where Mr. Hamrick was residing.[5] While at the home, the police recovered cartons of cigarettes, cans of beer, and the weapon used in the robbery.

On November 16, the day after the robbery, the police picked up Messrs. Swims, Hamrick, and Young for questioning. During the questioning, Mr. Hamrick and Mr. Young confessed to the robbery. Each man identified Mr. Swims as the person who carried the weapon during the robbery. A grand jury subsequently indicted all three men on charges of conspiracy and aggravat-

---

1. The circuit court ordered the sentences to be served concurrently.

2. It was eventually determined that the weapon was a Woodstock pellet/BB gun.

3. Additionally, a newspaper delivery man who was in the area observed Mr. Swims and Mr. Young getting into the escape vehicle.

4. The police allowed Mr. Young and Mr. Curtis to leave after the vehicle was impounded.

5. Mr. Swims also lived at the home.

ed robbery. Both Mr. Hamrick and Mr. Young entered into plea agreements with the State in return for testifying against Mr. Swims.

During Mr. Swims' trial, Mr. Hamrick and Mr. Young testified that all three men originally planned to simply run into the store, grab some cigarettes and beer, and flee. According to Mr. Hamrick and Mr. Young, there was never any agreement to use a weapon. In fact, they claim they were surprised when Mr. Swims brandished the weapon during the robbery. Because of the poor quality of the videotape, and due to disguises worn by Mr. Young and Mr. Swims during the robbery, it was not possible to identify the person holding the weapon during the robbery. Mr. Swims was identified as the person holding the weapon based solely upon the testimony of Mr. Hamrick and Mr. Young.

Mr. Swims relied on an alibi defense at trial. He presented two witnesses, Colleen Spaulding and Ruby Swims.[6] Each witness testified that Mr. Swims was at home when the robbery occurred. However, the State was able to impeach both witnesses.[7] The jury rejected the alibi defense and returned a verdict of guilty on both the charges of conspiracy, and of aggravated robbery. The trial court subsequently imposed upon Mr. Swims a sentence of one to five years imprisonment for the conspiracy conviction, and 120 years imprisonment for the aggravated robbery conviction.[8] Mr. Swims then filed a motion for a new trial, which the circuit court denied. It is from the circuit court's order denying a new trial that Mr. Swims now appeals.

## II.

### STANDARD OF REVIEW

Mr. Swims' appeal is from the circuit court's order denying his motion for a new trial. Our general standard for reviewing a case presented in this posture has been stated as follows:

> As a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994). . . . Thus, in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995). This Court has also explained that

> " '[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syllabus point 1, *Andrews v. Reynolds Memorial Hospital, Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997).

Syl. pt. 1, *Lively v. Rufus*, 207 W.Va. 436, 533 S.E.2d 662 (2000).

Having set forth the general guidelines for our consideration of this case, we note that the specific errors assigned by Mr. Swims to challenge his conviction and sentencing are largely unrelated, and may be subject to different standards of review. Accordingly, to preserve the continuity of our discussion, we set out additional, more specific, standards of review for each alleged error under

---

**6.** Colleen Spaulding is Mr. Swims' cousin; Ruby Swims is his sister.

**7.** Ms. Swims was identified as being present during the planning of the robbery and shared in the proceeds. Ms. Spaulding gave an incorrect date as to when she was with Mr. Swims.

**8.** The State filed a recidivist information alleging that Mr. Swims had three prior felony convictions. The information was dismissed after the trial court imposed the lengthy prison sentence.

the particular section of this opinion to which they apply.

## III.

## DISCUSSION

### A. Striking a Juror for Cause

■ The first issue raised by Mr. Swims is that the trial court committed error by striking a panel juror for cause after the conclusion of voir dire. The juror was struck at the request of the State. Our cases have held that "[t]he decision to grant a motion to strike a juror for cause is within the sound discretion of the trial court." *Wheeler v. Murphy*, 192 W.Va. 325, 331, 452 S.E.2d 416, 422 (1994). The appropriate standard for our review of this issue was fully outlined in *State v. Miller*, 197 W.Va. 588, 600–01, 476 S.E.2d 535, 547–48 (1996), as follows:

> In reviewing the qualifications of a jury to serve in a criminal case, we follow a three-step process. Our review is plenary as to legal questions such as the statutory qualifications for jurors; clearly erroneous as to whether the facts support the grounds relied upon for disqualification; and an abuse of discretion as to the reasonableness of the procedure employed and the ruling on disqualification by the trial court.

A trial court's determination as to whether to strike a juror for cause will be "reverse[d] only where actual prejudice is demonstrated." *Miller*, 197 W.Va. at 605, 476 S.E.2d at 552 (citation omitted).

■ After the completion of voir dire, but before the parties exercised their peremptory strikes, the State moved the trial judge to strike a juror for cause. It was disclosed to the trial judge that the juror in question, Anthony Hale, was the son of an attorney in defense counsel's law firm. There was no dispute regarding the relationship. Therefore, the trial judge struck the juror for cause. Our cases support the disqualification of Mr. Hale. This Court held in syllabus point 4 of *State v. Beckett*, 172 W.Va.

817, 310 S.E.2d 883 (1983), that "[a] potential juror closely related by blood or marriage to either the prosecuting or defense attorneys involved in the case or to any member of their respective staffs or firms should automatically be disqualified."

■ While there is no question that Mr. Hale was disqualified from sitting as a juror, Mr. Swims contends that it was impermissible for the trial judge to strike Mr. Hale for cause after the conclusion of voir dire. Mr. Swims argues that the State should have been required to use a peremptory strike to remove Mr. Hale. We disagree.

This Court has never held that a juror can be struck for cause only during voir dire. We held in *West Virginia Human Rights Comm'n v. Tenpin Lounge, Inc.*, 158 W.Va. 349, 357, 211 S.E.2d 349, 354 (1975), that a party must be diligent in his or her efforts to ascertain juror disqualification. We have also made clear that a party must alert the trial court "to the disqualification [of a juror] as soon as it [is] first discovered or as soon thereafter as the course of the proceedings [will] permit; and if the party fails to do so, he or she will be held to have waived all objections to such juror disqualification[.]" *McGlone v. Superior Trucking Co., Inc.*, 178 W.Va. 659, 668, 363 S.E.2d 736, 745 (1987). *See also Proudfoot v. Dan's Marine Service, Inc.*, 210 W.Va. 498, 558 S.E.2d 298 (2001) (explaining that a new trial is required when it is discovered after trial that a juror who voted on the verdict is statutorily disqualified because the juror had been convicted of a felony). Mr. Hale's disqualification became known only after voir dire. Upon learning of the disqualification, the State promptly alerted the trial judge.[9] Therefore, the trial judge was correct in not requiring the State to use a peremptory strike to remove Mr. Hale. *See* Syl. pt. 1, *State v. Beckett*, 172 W.Va. 817, 310 S.E.2d 883 ("Once a party by a timely objection demonstrates that a juror has either a statutory or common law ground for disqualification, such juror should be removed for cause.").

---

9. The jury panel was not asked during voir dire if they were related to anyone in defense counsel's law firm. Neither the trial transcript nor the briefs disclose exactly how the State learned of the relationship in this case.

### B. Videotape Transcript

■ Mr. Swims next argues that the State's demonstrative use of a transcript of statements made on the videotape that captured the robbery was erroneous; thus, the trial court committed error by allowing such use.

■ In reviewing the trial court's decision to allow the demonstrative use of the transcript in question, we may reverse only upon a finding that the trial court abused its discretion. "Generally, the use of either real or demonstrative evidence is left within the discretion of the trial court." *Runner v. Cadle Co.*, 204 W.Va. 21, 22, 511 S.E.2d 132, 133 (1998). *Cf.* Syl. pt. 14, in part, *State v. Bradshaw*, 193 W.Va. 519, 457 S.E.2d 456 (1995) ("The admission of demonstrative evidence rests largely within the trial court's discretion, and an appellate court will not interfere unless the trial court has abused that discretion.").

■ Mr. Swims contends that the transcript of statements made on the videotape was unnecessary as each juror was provided with wireless headphones to listen to the tape. The State replies that it was necessary to use the transcript because the sound was poor.[10] In syllabus point 3 of *State v. Hardesty*, 194 W.Va. 732, 461 S.E.2d 478 (1995), this Court addressed the issue of using a transcript of an audio recording or videotape recording as follows:

> Audio and video tape recording transcripts provided to a jury as an aid while the actual tapes are being seen or heard are not themselves evidence, should not be admitted into evidence, and should not be furnished to the jury during deliberations. Audio and video tape recording transcripts

are demonstrative aids for the understanding of evidence; they should be so marked and identified; and the court should instruct the jury regarding the purpose and limited use of the transcripts.

*See also State ex rel. Bennett v. Keadle*, 175 W.Va. 505, 511, 334 S.E.2d 643, 649 (1985) (stating that in the context of a deposition "a transcript may provide a check on the accuracy of the videotape, and vice versa, if either is introduced at trial.").

■ Under *Hardesty*, the trial court correctly permitted the transcript to be used. The State contended, and the trial judge found, that the sound on the videotape was of low quality and, thus, the transcript would assist the jury.[11] More importantly, the trial judge gave a limiting instruction on the use of the transcript, and the transcript was not provided to the jury during its deliberations.[12]

### C. Co–Defendant's Testimony About Unrelated Murder

■ The third issue raised by Mr. Swims involves the admission of a statement made by Mr. Hamrick during the State's case-in-chief. In syllabus point 9 of *Tudor v. Charleston Area Medical Center, Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997), we set forth our standard of review regarding a circuit court's decision to admit or exclude evidence:

> The West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admission of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary

10. Prior to using the transcript, the State asked Mr. Young and the store clerk to verify its accuracy. Mr. Young found the transcript was accurate. The store clerk made a minor correction.

11. The State was particularly interested in having the jury read the portion of the transcript where Mr. Young called out Mr. Swims' name twice during the robbery.

12. Mr. Swims contends that the limiting instruction given by the trial judge was insufficient. However, the State points out that the judge

asked both parties to submit a proposed limiting instruction. While the State submitted a proposed limiting instruction, Mr. Swims failed to do so. Consequently, we need not decide whether the limiting instruction given was adequate because our cases are clear in holding that "[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syl. pt. 1, *Maples v. West Virginia Dep't of Commerce*, 197 W.Va. 318, 475 S.E.2d 410 (1996).

... rulings of the circuit court under an abuse of discretion standard.

In addition, we have explained that our review of a trial court's legal analysis underlying its decision to admit evidence is *de novo*. See *State v. Guthrie*, 194 W.Va. 657, 680, 461 S.E.2d 163, 186 (1995) ("[M]ost rulings of a trial court regarding the admission of evidence are reviewed under an abuse of discretion standard .... an appellate court reviews *de novo* the legal analysis underlying a trial court's decision.").

During the State's direct examination of Mr. Hamrick, he testified that, pursuant to his plea agreement, he was required to provide evidence concerning a murder that had taken place in Georgia.[13] During cross examination by defense counsel, Mr. Hamrick was asked a series of questions regarding the plea agreement. As a result of defense counsel's extended questioning, the State informed the trial judge that during redirect examination Mr. Hamrick would be asked to give the age and sex of the murdered Georgia victim. The trial judge permitted the question over the objection of defense counsel. Consequently, Mr. Hamrick testified that the Georgia murder victim was a thirteen year old female.

Mr. Swims complains that, after hearing testimony about the age and sex of the Georgia murder victim, the jury might have "become more interested in a murder charge in Georgia than an aggravated robbery in West Virginia and possibly connect [Mr.] Swims with that murder[.]" In contrast, the State asserts that Mr. Swims' name was never mentioned to the jury in connection with the Georgia murder, and that Mr. Hamrick made only one statement regarding the victim's age and sex. Additionally, the State takes the position that the probative value of the evidence outweighed its potentially prejudicial effect.

■ Although we agree with Mr. Swims that the evidence pertaining to the Georgia

victim's sex and age was irrelevant and should not have been admitted into evidence, we do not find its admission to be prejudicial. We have held that "[a] judgment will not be reversed because of the admission of improper or irrelevant evidence when it is clear that the verdict of the jury could not have been affected thereby." Syl. pt. 7, *Torrence v. Kusminsky*, 185 W.Va. 734, 408 S.E.2d 684 (1991). *Accord* Syl. pt. 11, *State v. Wade*, 200 W.Va. 637, 490 S.E.2d 724 (1997). The jury was made aware, by unobjected evidence, that Mr. Hamrick had to cooperate with law enforcement officials investigating the Georgia murder. Consequently, we are confident that the mere mention of the victim's age and sex could not have affected the outcome in this case. See *Reed v. Wimmer*, 195 W.Va. 199, 209, 465 S.E.2d 199, 209 (1995) ("Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the outcome of the trial. Stated conversely, error is prejudicial and grounds for reversal only when it affects the final outcome and works adversely to a substantial right of the party assigning it.").

## D. Failure to Redact Plea Agreements

The final issue presented by Mr. Swims involves the trial judge's denial of his motion to redact certain language from the plea agreements of Mr. Young and Mr. Hamrick. Specifically, Mr. Swims objected to language in the plea agreements which stated that neither co-defendant would be placed in the same correctional facility as Mr. Swims.

In other jurisdictions, it is well-settled that "on direct examination, the prosecutor may elicit testimony regarding [a co-defendant's] plea agreement and actually introduce the plea agreement into evidence." *United States v. Lewis*, 110 F.3d 417, 421 (7th Cir. 1997) (internal quotations and citations omit-

---

**13.** In addition to Mr. Hamrick's testimony, the plea agreement, which was admitted into evidence, contained a reference to the Georgia murder. Because of our discussion in Part D of this opinion, any reference to the Georgia murder contained in Mr. Hamrick's plea agreement must be redacted. Additionally, we find that actual testimony on the issue of the Georgia murder should not have been allowed. On retrial, Mr. Hamrick should be limited to simply testifying that he agreed to cooperate in another case pending in Georgia.

ted).[14] *Accord United States v. Renteria,* 106 F.3d 765 (7th Cir.1997); *United States v. Lord,* 907 F.2d 1028 (10th Cir.1990); *United States v. Drews,* 877 F.2d 10 (8th Cir.1989); *United States v. Edelman,* 873 F.2d 791 (5th Cir.1989); *United States v. Townsend,* 796 F.2d 158 (6th Cir.1986); *United States v. McNeill,* 728 F.2d 5 (1st Cir.1984); *United States v. Henderson,* 717 F.2d 135 (4th Cir. 1983); *People v. Racheli,* 878 P.2d 46 (Colo. Ct.App.1994); *Smith v. United States,* 687 A.2d 1356 (D.C.1996); *Commonwealth v. Rivera,* 430 Mass. 91, 712 N.E.2d 1127 (Mass.1999). *See generally* 3 Stephen A. Saltzburg, Michael M. Martin, and Daniel J. Capra, *Federal Rules of Evidence* § 608.02[16] (8th ed. 2002) ("[T]he Courts have generally allowed the prosecution to offer plea agreements on direct examination of cooperating witnesses, even if the defendant agrees not to raise the agreement on cross-examination.").

Several purposes have been recognized for allowing a prosecutor to introduce a co-defendant's plea agreement. Those purposes include:

> (1) to allow the jury accurately to assess the credibility of the witness; (2) to eliminate any concern that the jury may harbor concerning whether the government has selectively prosecuted the defendant; and (3) to explain how the witness has first-hand knowledge concerning the events about which he/she is testifying.

*United States v. Universal Rehab. Servs. (PA), Inc.,* 205 F.3d 657, 665 (3d Cir.2000).[15]

 Based upon the preceding discussion, we hold that during the direct examination of a co-defendant, a prosecutor may elicit testimony regarding the co-defendant's plea agreement, and may actually introduce the plea agreement into evidence for purposes which include, but are not necessarily limited to: (1) allowing the jury to accurately assess the credibility of the witness; (2) eliminating any concern by the jury that the government has selectively prosecuted the defendant; and (3) explaining how the witness has first-hand knowledge of the events about which he/she is testifying.

 However, the ability of a prosecutor to introduce into evidence the plea agreements of co-defendants is not without qualifications.[16] "It is well established that the plea agreements of [co-defendants] cannot be used as evidence of a defendant's guilt." *United States v. Gaev,* 24 F.3d 473, 476 (3d Cir.1994). *See also United States v. Sanders,* 95 F.3d 449, 454 (6th Cir.1996) ("[T]he guilty plea ... of a co-defendant or co-conspirator is not admissible at trial ... as substantive evidence of the defendant's guilt."); *United States v. Mitchell,* 31 F.3d 271, 277 (5th Cir.1994) ("[T]he fact that a co-conspirator has entered a plea of guilty to the offense charged is not evidence of the defendant's guilt."); *United States v. Davis,* 766 F.2d 1452, 1456 (10th Cir.1985) ("The law is clear that the guilty plea or conviction of a codefendant may not be used as substantive evidence of another's guilt."); *Accord v. Hedrick,* 176 W.Va. 154, 158, 342 S.E.2d 120, 124 (1986) ("[A]n accomplice's guilty plea cannot be used to show the defendant's guilt by association[.]"). Prosecutors are also generally prohibited from using plea agreements to bolster the testimony of co-defendants.[17] *See United States v. Herrera,* 832 F.2d 833, 835 (4th Cir.1987) ("[E]vidence of plea agreements containing provisions relating to possible polygraph testing constitutes improper bolstering of a witness's testimony."); *State*

---

**14.** *See also,* Syl. pt. 3, in part, *State v. Caudill,* 170 W.Va. 74, 289 S.E.2d 748 (1982) ("In a criminal trial an accomplice may testify as a witness on behalf of the State to having entered a plea of guilty to the crime charged against a defendant[.]").

**15.** *See also* Syl. pt. 1, *State v. James,* 186 W.Va. 173, 411 S.E.2d 692 (1991) ("The prosecution must disclose any and all inducements given to its witnesses in exchange for their testimony at the defendant's trial.").

**16.** *See generally,* James D. Carlson, *Admissibility of Plea Agreements on Direct Examination—Are There Any Limits?* 55 U.Miami L.Rev. 707 (2001).

**17.** *See generally United States v. Robbins,* 197 F.3d 829 (7th Cir.1999); *United States v. Tulk,* 171 F.3d 596 (8th Cir.1999); *Smith v. United States,* 687 A.2d 1356 (D.C.1996); *Nickell v. State,* 885 P.2d 670 (Okla.Crim.App.1994); *Commonwealth v. Lam,* 453 Pa.Super. 497, 684 A.2d 153 (Pa.Super.Ct.1996).

*v. Snider*, 296 Or. 168, 674 P.2d 585, 586 (Or.1983) ("Evidence of a plea agreement containing a provision that the state's witness must take and pass a polygraph examination to verify trial testimony constitutes improper bolstering of the witness's credibility.").[18] Similarly, prosecutors are generally not permitted to use plea agreements to directly or indirectly vouch for the veracity of co-defendants who have pleaded guilty and testify against a defendant.[19] *See United States v. Beasley*, 102 F.3d 1440, 1449 (8th Cir.1996) ("Impermissible vouching may ... occur when the government implies a guarantee of a witness's truthfulness, refers to facts outside the record, or expresses a personal opinion as to a witness's credibility."); *State v. Shuler*, 344 S.C. 604, 545 S.E.2d 805, 818 (S.C.2001) ("Improper vouching occurs when the prosecution places the government's prestige behind a witness by making explicit personal assurances of a witness' veracity, or where a prosecutor implicitly vouches for a witness' veracity[.]"). Commonly, trial courts will redact offending portions of a plea agreement to allow its proper use while at the same time protecting a defendant from any improper use of the document. *See, e.g., Commonwealth v. Ciampa*, 406 Mass. 257, 547 N.E.2d 314, 318 (Mass.1989) ("The trial judge must study the [plea] agreement with care ... and eliminate prejudicial and irrelevant provisions.") (citing *United States v. Cosentino*, 844 F.2d 30 (2d Cir.1988), and *United States v. Brown*, 720 F.2d 1059 (9th Cir.1983)).[20]

 Following the aforementioned authority, we hold that a trial judge considering whether, or the extent to which, a plea agreement may be used by the prosecution must endeavor to protect the defendant from impermissible uses of the plea agreement, such as using the plea agreement: (1) as evidence of a defendant's guilt, (2) to bolster the testimony of a co-defendant, or (3) to directly or indirectly vouch for the veracity of a co-defendant who has pleaded guilty and then testified against the defendant. To carry out this duty, the trial judge must study the plea agreement with care and redact all prejudicial and irrelevant provisions.

 Having established the propriety of allowing the use of a co-defendant's plea agreement for certain purposes, we now pause to consider the proper standard for our review of a trial judge's decision in this regard. This Court has previously announced the general holding that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). It has been recognized that the decision whether to admit the plea agreement of a co-defendant is an evidentiary ruling. For example, the United States Court of Appeals for the Third Circuit has stated that "[t]he trial court's decision to admit plea agreements of co-conspirators is an evidentiary ruling which we review for abuse of discretion." *United States v. Gaev*, 24 F.3d 473, 476 (3d Cir. 1994). *See also United States v. Collins*, 223 F.3d 502, 510 (7th Cir.2000) (commenting, with regard to the admission of plea agreements of ten government witnesses including some co-conspirators, that "[t]he admission of the plea agreements was an evidentiary decision, which we review for abuse of discretion." (citation omitted)). In accordance with the precedent of this Court, and with the foregoing authority, we hold that a trial court's decision to admit the plea agreement

---

18. Courts generally require the redaction of language in plea agreements that refer to polygraph testing because "a jury might give special credence to the testimony of the state's witness because of the binding force of the plea bargain, implying a guarantee of the witness's veracity." *State v. Snider*, 296 Or. 168, 674 P.2d 585, 586 (Or.1983). In the instant case, the State's brief indicates that references to polygraph testing were redacted from the plea agreements at issue.

19. *See generally United States v. Tocco*, 200 F.3d 401 (6th Cir.2000); *United States v. Thornton*, 197 F.3d 241 (7th Cir.1999); *United States v. Santana*, 150 F.3d 860 (8th Cir.1998); *United States v. Weston*, 960 F.2d 212 (1st Cir.1992); *United States v. Bowie*, 892 F.2d 1494 (10th Cir. 1990); *Smith v. United States*, 687 A.2d 1356 (D.C.1996); *Nickell v. State*, 885 P.2d 670 (Okla. Crim.App.1994).

20. *See generally United States v. Hubbard*, 61 F.3d 1261 (7th Cir.1995); *United States v. Herrera*, 832 F.2d 833 (4th Cir.1987); *United States v. Hilton*, 772 F.2d 783 (11th Cir.1985).

of a co-defendant is an evidentiary ruling that is reviewed for abuse of discretion.

 The plea agreements entered into by Mr. Young and Mr. Hamrick were introduced into evidence as part of the prosecutions case in chief against Mr. Swims.[21] Both plea agreements contained the following language: "In consideration of the foregoing, [the] State will agree to request a safe placement for defendant in a correctional facility physically separate from that where codefendant Jessie Swims is housed." Mr. Swims contends that this language was prejudicial because it permitted the jury to infer that he "would be in some type of correctional facility even if he was not convicted of the instant offenses." The State argues that the probative value of the language complained of outweighed any prejudicial effect that it could have had on the jury.[22] We disagree.

Language similar to that retained in the two plea agreements at issue was discussed in *Commonwealth v. Ciampa*, 406 Mass. 257, 547 N.E.2d 314 (Mass.1989). The decision in *Ciampa* involved several defendants who were convicted of offenses that included first degree murder and armed robbery. On appeal, one of the issues presented concerned the trial judge's failure to redact portions of the prosecution witness' plea agreement before allowing the agreement to be admitted into evidence. Included in the language the trial judge failed to redact was a statement that the witness would be placed in a program to protect his life and safety. In finding that the trial court erred by not redacting the statement, the appellate court stated that "[t]he language was unfairly prejudicial to the defendants because it implied that the Commonwealth agreed that [the witness] reasonably believed his life and safety would be in jeopardy, if he testified against the defendants." *Ciampa*, 547 N.E.2d at 318. *See United States v. Arroyo–Angulo*, 580 F.2d 1137, 1145 (2d Cir.1978) (language indicating co-defendant's family was placed in protective custody was redacted from plea

agreement); *United States v. Koss*, 506 F.2d 1103, 1113 n. 8 (2d Cir.1974) (language referring to threats on the co-defendant's life because of his testimony was redacted from plea agreement).

In the instant case, as in *Ciampa*, the language in the plea agreements implied that the State agreed with Mr. Hamrick's and Mr. Young's belief that their personal safety was in jeopardy due to their testimony against Mr. Swims. We find this inference was tantamount to vouching for the veracity of both witnesses. Furthermore, we agree with Mr. Swims that the language in the plea agreements could be interpreted as indicating that he was guilty of some other crime that was not before the jury. Allowing the complained of language to remain in the plea agreement implied facts, not otherwise before the jury, that were not proper for jury consideration in deciding on the guilt or innocence of the defendant. The *Ciampa* error committed in this case, and the additional rationale provided by Mr. Swims, both concern impermissible inferential vouching. While we find both reasons suggest that the disputed language in the plea agreements should have been redacted, we believe there is yet another stronger, reason for redacting the language.

 The disputed language in the plea agreements by Mr. Hamrick and Mr. Young went beyond vouching. The language contained in the plea agreements amounted to substantive evidence of Mr. Swims' guilt. *See* 2 Jack B. Weinstein and Margaret A. Berger, *Weinstein's Federal Evidence*, § 410.08[1] (2d ed. 2002) (A co-defendant's plea agreement "clearly cannot be used as substantive evidence against [a defendant] in the case."). The language of the plea agreements, in effect, informed the jury that Mr. Swims should be found guilty because of the testimony of Mr. Hamrick and Mr. Young. The law in this state, and the country, is

---

**21.** There was no objection made to introducing the plea agreements, per se. Rather, Mr. Swims' objection was limited to certain language contained in the plea agreements.

**22.** The State also points out that this language was never discussed before the jury during the trial. Thus, it may be possible that the jury did not read the language during deliberations.

quite clear in holding that "[t]he defendant has a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else." 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 4–10(F)(1) (4th ed.2000). In order for the disputed language in the plea agreements to be unoffensive, that language had to indicate that "if" Mr. Swims was found guilty, "[the] State will agree to request a safe placement for defendant in a correctional facility physically separate from that where codefendant Jessie Swims is housed." Without the insertion in the plea agreements of the qualifying word "if," the plea agreements became impermissible substantive evidence of Mr. Swims' guilt.[23] Consequently, we find that the trial judge committed reversible error in failing to redact the disputed language from the plea agreements.[24]

## IV.

## CONCLUSION

In view of the foregoing, Mr. Swims' conviction and sentence for conspiracy and aggravated robbery are reversed and this case is remanded for a new trial.

Reversed and Remanded.

Justice STARCHER concurs.

23. Although not raised as an issue by Mr. Swims, in reviewing the plea agreements this Court has found another provision contained in Mr. Young's plea agreement is problematic, and its presentment to the jury constitutes plain error. *See* Syl. pt. 1, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998) ("This Court's application of the plain error rule in a criminal prosecution is not dependent upon a defendant asking the Court to invoke the rule. We may, *sua sponte*, in the interest of justice, notice plain error."). Because this case will be retried, we take this opportunity to inform the parties and the trial judge that the following emphasized language *must be redacted* from Mr. Young's plea agreement (in addition to the language discussed in the body of this opinion), before the document may be admitted into evidence:

MAYNARD, Justice, dissenting:

(Filed July 3, 2002)

I agree with the majority that the trial court abused its discretion in admitting the co-defendants' plea agreements without redacting the language that neither co-defendant would be placed in the same correctional facility as Mr. Swims. However, I disagree with the majority that the challenged language constitutes reversible error.

The language at issue states: "In consideration of the foregoing, [the] State will agree to request a safe placement for defendant in a correctional facility physically separate from that where codefendant Jessie Swims is housed." The majority concludes that "[w]ithout the insertion in the plea agreements of the qualifying word "if," the plea agreements became impermissible substantive evidence of Mr. Swims' guilt." This conclusion defies good old-fashioned common sense. Any reasonable person who reads this language would understand it to mean that *in the event Mr. Swims is convicted of the charged crime and incarcerated*, he will not be placed with his co-defendants.

Significantly, the language at issue was never discussed in front of the jury during trial. Further, there is no indication that the jury was not instructed properly concerning presumption of innocence and the State's burden of proving guilt. Finally, substantial evidence of Mr. Swims' guilt was presented at trial. In light of all this, I simply find it incredible that this one sentence buried in a plea agreement affected the outcome of the

3. He represents that his 16 November written statement to authorities is true in sum and substance *with respect to the conduct of Jessie Swims;* however, it may be inaccurate in certain minor regards where defendant tried to minimize his involvement in the crime.
Mr. Young's plea agreement should make no direct reference to Mr. Swims.
Although we have invoked plain error as to one provision in Mr. Young's plea agreement, this fact does not preclude Mr. Swims from challenging any other language in either plea agreement on the ground that such language is impermissible for the jury to receive.

24. Because we have determined that Mr. Swims is entitled to a new trial, we need not consider his assignment of error pertaining to the length

trial.[1] Accordingly, I dissent.

of the sentence imposed for the aggravated robbery conviction.

1. I also disagree with the majority's conclusion that another provision of Mr. Young's plea agreement constituted plain error.