# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

June 13, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-1051** (Jefferson County 13-F-40)

**James Willard Johnson,**
**Defendant Below, Petitioner**

### MEMORANDUM DECISION

Petitioner James Willard Johnson, by counsel Christopher P. Stroech, appeals the order of the Circuit Court of Jefferson County entered on December 12, 2013, denying petitioner's motion for a new trial and sentencing him upon his conviction for malicious assault. The State of West Virginia, by counsel Brandon C. H. Sims, responds in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual and Procedural Background

At petitioner's trial in August of 2013, Vincent Nelson, the victim herein, testified that he had borrowed money from petitioner. Mr. Nelson testified that when he went to petitioner's home in Martinsburg to repay the debt on the afternoon of September 7, 2012, petitioner accused him of entering the home without permission and stealing a ring. Mr. Nelson denied this and allowed petitioner to search his car. Mr. Nelson testified that after petitioner retrieved and threatened him with a kitchen knife, Mr. Nelson got into his car and left. He further testified that as he was driving toward the Budget Inn in Ranson, which was where he lived with his girlfriend, he noticed that petitioner was following in a separate vehicle. Mr. Nelson testified that petitioner called his mobile telephone during the drive and that during the two calls he answered, petitioner accused him of doing something that was "messed up" [i.e., the alleged theft]. From his car, Mr. Nelson telephoned his girlfriend, Candy Taulton, to tell her that petitioner had accused him of breaking into petitioner's house.

Mr. Nelson testified that when they arrived at the motel parking lot and exited their respective vehicles, petitioner repeatedly accused him of doing something that was "messed up." Mr. Nelson testified that petitioner concluded by saying, "I'll be back." Ms. Taulton, who was standing outside of their motel room at the time, also heard petitioner say, "I'll be back."

1

Petitioner then drove from Ranson back to Martinsburg, where he picked up another man, his Co-Defendant Eddie "Bo Bo" Young. Mr. Young testified that petitioner asked him to "take a ride" so they could go and "have a talk" with Mr. Nelson. Meanwhile, Mr. Nelson went to his mother's home and obtained an aluminum baseball bat that he took back to his motel room.

Mr. Nelson testified that later that same day, he and Ms. Taulton were in the motel room watching television when they heard a knock on the door. Ms. Taulton testified that she saw it was their neighbor knocking, but petitioner and Mr. Young were also there. Ms. Taulton and Mr. Nelson testified that petitioner and Mr. Young forced their way into the room, pushed Ms. Taulton outside of the room, and shut the door. Ms. Taulton testified that Mr. Young had a handgun stuck into the front waistband of his pants.

Mr. Nelson, who was still inside the motel room, testified that Mr. Young entered with a gun, and that petitioner pulled a gun after the door was shut. He said that petitioner and Mr. Young attacked him, including repeatedly striking him in the head with their handguns. Mr. Nelson testified that he fought back in an attempt to defend himself, but toward the end of the altercation he was rendered dazed and bleeding from head wounds. Ms. Taulton testified that the motel room curtains were pulled down during the struggle and through the window she saw Mr. Young striking Mr. Nelson with a gun while petitioner was striking Mr. Nelson with the bat. She testified that petitioner and Mr. Young then ran out of the room and ran from the premises.

Mr. Young testified for the defense at petitioner's trial. He admitted that he and petitioner were present and entered the motel room. However, he asserted that Ms. Taulton allowed them in, and he denied that anyone had firearms. He testified that it was Mr. Nelson who attacked them first by hitting him in the arm with the baseball bat, breaking his arm.

Police and an ambulance were called, and Mr. Nelson was transported to a hospital. The investigating officer observed Mr. Nelson's bleeding head and saw blood spatter about the room. A clip from a handgun was found on the bed, but its owner was never identified.

At trial, the doctor who treated Mr. Nelson in the emergency room testified that Mr. Nelson had lacerations on his head that were closed with medical staples, contusions on his forehead and the back of his head, and a concussion. The doctor offered his expert opinion that the wounds were consistent with Mr. Nelson's explanation that he was struck multiple times on the head with a firearm.

Mr. Nelson was interviewed by police and identified his attackers as "Bum" Johnson and Eddie "Bo Bo" Young, both of whom Mr. Nelson had known for years. Although Mr. Nelson did not know "Bum" Johnson's real first name, police ascertained that "Bum" Johnson is the petitioner herein, James Willard Johnson.

Petitioner was arrested and subsequently indicted for first degree robbery, assault during the commission of a felony, breaking and entering, conspiracy, malicious assault, and brandishing a firearm. At trial, the jury found him guilty of just one count, malicious assault, a felony. The jury acquitted him of the remaining charges. Pursuant to West Virginia Code § 61-2-9(a), the circuit court sentenced petitioner to the statutory term of two to ten years in prison.

2

**Standard of Review**

Petitioner appeals the circuit court's order denying his motion for a new trial. We analyze such appeals using the following standard of review:

1. "'"Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).' Syllabus point 1, *Andrews v. Reynolds Memorial Hospital, Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997)." Syllabus point 1, *Lively v. Rufus*, 207 W.Va. 436, 533 S.E.2d 662 (2000).

2. "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syllabus point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

Syl. Pts. 1 and 2, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011). To the extent that petitioner's individual assignments of error involve specific standards of review, those standards are set forth below.

**Discussion**

Petitioner asserts three assignments of error on appeal. First, he argues that the circuit court erroneously permitted the emergency room doctor to testify as to his opinion that Mr. Nelson's wounds were consistent with being struck multiples times in the head with a firearm. Petitioner contends that this opinion was beyond the scope of the expert witness disclosure provided by the State and is not included in any of Mr. Nelson's medical records. He argues that the State should have disclosed this opinion testimony before trial pursuant to Rule 16(a)(1)(E) of the West Virginia Rules of Criminal Procedure.[1]

We analyze evidentiary rulings under the following standard:

The West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admission of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under

---

[1]This rule provides that upon request of the defendant, the State shall disclose a written summary of expert testimony it intends to offer during its case-in-chief, which summary must describe the witness's opinions, the bases and reasons therefore, and the witness's qualifications. W. Va. R. Crim. Pro., Rule 16(a)(1)(E).

an abuse of discretion standard.

*State v. Swims*, 212 W.Va. 263, 269-70, 569 S.E.2d 784, 790-91 (2002) (quoting Syl. Pt. 9, *Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 111, 506 S.E.2d 554 (1997)). After considering the parties' arguments, we find that the circuit court did not abuse its discretion in admitting this testimony or in denying the motion for new trial on this basis.

The treating physician Dr. Gregory Allen, without objection, was qualified as an expert in the field of emergency medicine. He offered his opinion that Mr. Nelson's injuries "were consistent with the complaint that he walked in [to the hospital] with that day." This evidence was sufficiently covered by the State's pre-trial disclosure that provided, "Dr. Allen will testify regarding his medical education, training, and experience, and then offer expert testimony regarding his examination of the victim, Vincent Rousseau Nelson, and findings and resulting diagnosis and/or treatment. He will further offer expert testimony *regarding his opinion of the injuries* and healing." (Emphasis added.) Petitioner admits that Mr. Nelson's medical records were provided to the defense pre-trial. These medical records reflect that Mr. Nelson told the hospital staff that he had been struck in the head with a gun.[2] Dr. Allen explained that a patient's explanation of what happened is how the doctor begins his assessment of the patient's medical needs. Furthermore, petitioner also had the police report, and the police report included Mr. Nelson's statement that petitioner and Mr. Young struck him in the head with their guns. As the circuit court correctly recognized, this area of inquiry should not have come as any surprise to the defense. We, therefore, find no error with regard to the admission of Dr. Allen's testimony.

In his second assignment of error, petitioner asserts that the circuit court erred in permitting the State to offer testimony that his identity was previously known to law enforcement officers. He asserts that the admission of this evidence violated an *in limine* order barring the State from offering evidence about petitioner's prior criminal history. As we explained above, a circuit court's rulings on the admission of evidence are reviewed for an abuse of discretion. After a review of the trial transcript, we find no abuse of discretion.

During cross-examination of the victim, Mr. Nelson, defense counsel questioned whether he had correctly identified his assailant, someone he knew only by the nickname "Bum" Johnson. Defense counsel elicited testimony that Mr. Nelson had initially believed the petitioner's first name was "Charles." In light of those questions, the prosecutor inquired of the investigating officer, Officer Custer, about the method he used to determine the real name of "Bum" Johnson: "How were you able to, based on your interview with Mr. Nelson and Ms. Waldron and Ms. Doughtery, identify James Johnson to be Bum Johnson?" Defense counsel objected, and the trial court agreed with the State that the defense had put identity in issue for the jury. After talking with the lawyers, the trial court indicated that the officer could answer the question without violating the pre-trial order. The circuit court permitted the prosecutor to elicit from Officer Custer that other officers had helped identify petitioner because one of the officers used to live beside petitioner. Because there was no mention or suggestion of any prior criminal record, the *in limine* order was not violated. Furthermore, it was not an abuse of discretion for the

---

[2]Petitioner has not included the medical records in the appendix record on appeal. However, Dr. Allen testified to their contents, and the trial transcript is in the appendix record.

trial court to allow this testimony because petitioner's counsel had raised this area of inquiry. Accordingly, we find no merit to this assignment of error.

Finally, petitioner argues that there was insufficient evidence to convict him of malicious assault beyond a reasonable doubt. With regard to claims of sufficiency of the evidence, we held the following in *State v. Guthrie*:

> 1. The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.
> . . . .
> 3. A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pts. 1 and 3, *id.,* 194 W.Va. 657, 461 S.E.2d 163 (1995). Furthermore,

> [w]hen a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Syl. Pt. 2, *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996).

In West Virginia Code § 61-2-9(a), malicious assault is defined as "[i]f any person [does] maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall . . . be guilty of a felony[.]" After a review of the parties' arguments and the trial transcript, and viewing the evidence in a light favoring the State's theory, we find that petitioner has failed to meet his heavy burden of challenging the malicious assault conviction. It is undisputed that petitioner picked up Co-Defendant Young and went to the victim's motel; petitioner and Co-Defendant Young entered the motel room; and an

altercation ensued. Mr. Nelson testified that petitioner and Mr. Young struck him in the head with their guns. Ms. Taulton testified that she saw part of the attack through the motel room's window, where she witnessed petitioner and Co-Defendant Young striking Mr. Nelson, and then petitioner and Mr. Young ran away. During the altercation, Mr. Nelson received a concussion and injuries to the front and back of his head that required medical treatment. Although there was conflicting testimony about who attacked whom first, and about whether petitioner and Co-Defendant Young had firearms, such evidentiary conflicts and credibility questions were resolved by the jury.[3]

Petitioner argues that to find him guilty of malicious assault, the jury would have had to believe Mr. Nelson's testimony—but to find him not guilty of the remaining charges, the jury would have had to believe Mr. Young's testimony. We find no merit to this argument. First, the jury was free to resolve credibility issues as it saw fit, and the jury may well have believed some, but not all, of any particular witness's testimony. Second, to the extent that petitioner seems to be asserting that the verdicts were inconsistent, that would not constitute a basis for reversal. *See State v. Hall*, 174 W.Va. 599, 602-603, 328 S.E.2d 206, 210-211 (1985) (discussing *U.S. v. Powell*, 469 U.S. 57 (1984) and *Dunn v. U.S.*, 284 U.S. 390 (1932), which summarize reasons why appellate review on the basis of inconsistent verdicts is not generally available).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[3]One witness for the State, Nancy Doughtery, did give trial testimony that conflicted with the testimony of other State's witnesses and with her own initial statement to police. However, there was evidence offered at trial to impeach Ms. Doughtery's credibility. Furthermore, although Ms. Doughtery asserted that she saw other men, not petitioner and Mr. Young, enter the room and assault Mr. Nelson, even Mr. Young testified that he and petitioner were in the motel room and involved in the altercation. It was for the jury to weigh Ms. Doughtery's testimony and credibility.